# SETTLEMENT AGREEMENT, GENERAL RELEASE, AND COVENANT NOT TO SUE

This Settlement Agreement, General Release, and Covenant Not to Sue ("Agreement") is between Defendant Rancho Bravo, Inc., and Manuel Delgado ("Delgado").

## Recitals

A. Delgado alleges he worked for Rancho Bravo as a waiter from approximately May 2014 until May 2015.

B. On June 25, 2015, Delgado filed this action (the "Lawsuit") against Rancho Bravo alleging unpaid wages under the Fair Labor Standards Act of 1938, 29 U.S.C. §201 et seq. ("FLSA") and I.C. §22-2-2-9, et seq., retaliation under 29 U.S.C. §215(a)(3) and I.C. §22-2-2-11, and theft.

C. Delgado alleges he is owed the gross sum of Seven Thousand Seven Hundred Fifty-Eight Dollars and Forty Cents ($7,758.40) in unpaid wages from Rancho Bravo.

D. Rancho Bravo vehemently denies the allegations in Delgado's Complaint and enters into this Agreement solely to avoid the expense of further litigation.

E. Concurrent with this litigation, the Parties, through their respective counsel, have engaged in settlement negotiations to ascertain whether a reasonable and fair settlement might be achieved, recognizing: (1) the claims for unpaid wages, penalties, liquidated damages, costs and expenses, and attorneys' fees alleged by Delgado; (2) the defenses (and damages preclusions or limitations) which would be raised by Rancho Bravo if this matter were to proceed; (3) the evidence and testimony anticipated at the trial of this matter; and (4) the inevitable risks and expenses of litigation. This Agreement represents the culmination of those efforts.

F. Pursuant to the terms of this Agreement, Rancho Bravo shall pay Delgado a gross sum of Fifteen Thousand Dollars and No Cents ($15,000.00) as consideration for this Agreement.

G. Neither Delgado nor Delgado's counsel will seek any additional relief, damages, costs, attorneys' fees or other litigation expenses arising out of this Lawsuit.

In consideration of the mutual covenants, promises, and obligations contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is mutually acknowledged, and subject to the approval of the Court, the Parties hereby agree as follows:



EXHIBIT A

### Agreement

1.  **Recitals.** The Parties acknowledge that the recitals preceding this Paragraph 1 are true and correct, and are incorporated into this Agreement.

2.  **Definition.** Throughout this Agreement, the term "Rancho Bravo" or "Company," when used alone, shall encompass the following: (a) Rancho Bravo, Inc., and any subsidiary, parent company, predecessor, affiliated entity, related entity, or division thereof; and (b) any current or former partner, officer, director, trustee, agent, employee, representative, insurer, or employee benefit or welfare program or plan (including the administrators, trustees, fiduciaries, and insurers of such program or plan) of an entity referenced in or encompassed by subparagraph 1(a).

3.  **Settlement Consideration.** In consideration of the promises contained in this Agreement, and in consideration for Delgado completing all paperwork necessary to effectuate the dismissal with prejudice of the pending Lawsuit, the Company shall pay Delgado the gross sum of Fifteen Thousand Dollars and No Cents ($15,000.00). This payment shall be disbursed as follows:

    (a) A gross sum of Eight Thousand Five Hundred And Three Dollars and Thirteen Cents ($8,503.13), less all applicable taxes and withholdings, payable to Delgado. Rancho Bravo will report this amount on a Form W-2 as wage income provided to Delgado. This check will be sent to Delgado, in care of his counsel, Daniel Kent ("Counsel"). Seven Thousand Seven Hundred Fifty-Eight Dollars and Forty Cents ($7,758.40) of that gross sum is being paid to Delgado to resolve the wage claims in the Lawsuit. Seven Hundred Forty-Four Dollars And Seventy-Three Cents ($744.73) of that gross sum specifically is being paid to Delagdo by Rancho Bravo in exchange for the general release of claims set forth below in Paragraph 5 as well as other obligations given to him under this Agreement; and

    (b) A gross sum of Six Thousand Four Hundred And Ninety-Six Dollars and Eighty-Seven Cents ($6,496.87), shall be made payable as attorneys' fees and costs to Delgado's Counsel, Lapointe Law Firm PC, One N. Pennsylvania St., Suite 730, Indianapolis, IN 46204. A form 1099 will be issued to Delgado and his Counsel for this amount.

    The payment described in this Paragraph 3 shall be paid within five (5) business days of the Court approving this Agreement and/or the dismissal of the lawsuit with prejudice, whichever is later. Delgado authorizes his counsel to file a Dismissal with Prejudice on his behalf.

    The payment described in this Paragraph 3 reflects consideration provided to Delgado over and above anything of value to which Delgado is already entitled. Moreover, Delgado acknowledges and agrees that the consideration and sums included in this Paragraph 3 are the maximum sums ever to be due Delgado from the Company, and he hereby relinquishes and waives any rights to other forms of payment or benefits under any other agreement between Delgado and the Company, whether written, oral, express or implied.

In paying the amounts specified in Paragraph 3, the Company makes no representation regarding the tax consequences or liability arising from said payments. The Parties understand and agree that any and all tax liability that may be due or become due because of the payments referenced above shall be the sole responsibility of the party to whom or for whose benefit such payment is made, and that such party will pay any such taxes that may be due or become due. The Company has no monetary liability or obligation regarding payment whatsoever (other than delivering valid checks in the sums described in Paragraph 3 of this Agreement to Delgado's Counsel).

4.  **No Employment.** Delgado agrees that he will not apply for employment with or otherwise seek to become employed by the Company and that if he does so, the Company will have no obligation to consider his application.

5.  **General Release and Waiver of Claims.** Delgado (for himself, his agents, assigns, heirs, executors, and administrators) releases and discharges the Company from any claims which were or which could have been asserted in the Lawsuit and any claim, demand, action, or cause of action, known or unknown, which arose at any time from the beginning of time to the date he executes this Agreement, and waives all claims relating to, arising out of, or in any way connected with his employment with Rancho Bravo, Inc., the cessation of his employment, the compensation or benefits payable in connection with that employment or the cessation of that employment, any property left in the possession of the Rancho Bravo and/or any other interaction with the Company, including (without limitation) any claim, demand, action, or cause of action, including claims for attorneys' fees, based on but not limited to: (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq.; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, et seq.; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq.; (f) the National Labor Relations Act, 29 U.S.C. § 151, et seq.; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 et seq.; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 et seq.; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq.; (j) The Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.; (k) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, et seq.; (l) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (m) past or future wages, severance, compensation, vacation pay, benefits, bonuses, commissions, fringe benefits, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Paragraph 3; (n) The Indiana Civil Rights Law, Ind. Code § 22-9-1-1 et seq.; (o) any federal, state, or local wage law, including but not limited to the Indiana wage payment statute, Ind. Code § 22-2-4-1 et seq., and any Indiana wage law; (p) The Indiana Family Military Leave Law; (q) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing. Notwithstanding the foregoing, this Agreement is <u>not</u> intended to operate as a waiver of any retirement or pension benefits that are vested, the eligibility and entitlement to which shall be governed by the terms of the applicable plan. Moreover, nothing in this Paragraph or Agreement shall be interpreted to waive or extinguish any rights which -- by express and unequivocal terms of law -- may not under any circumstances be waived or extinguished. However, this

Agreement's express intent is to have settled and compromised any and all claims, including claims for any alleged compensation, Delgado may have against the Company.

6. **Covenant Not to Sue.** Delgado agrees that he will never sue or file a lawsuit against the Company including, without limitation, any lawsuit concerning or in any way related to his employment, the compensation or benefits payable in connection with his employment, or any other interaction or relationship with the Company which may have occurred prior to the Effective Date of this Agreement. Should Delgado violate any aspect of this Paragraph, Delgado agrees that any suit shall be null and void, and must be summarily dismissed or withdrawn. Delgado also agrees that if a claim or charge of any kind should be raised, brought, or filed in his name or on his behalf which concerns or is in any way related to the matters released herein, Delgado waives any right to, and agrees not to take, any resulting award. Delgado further acknowledges and agrees that he has not assigned any claim, action or cause of action which he may have against the Company and that any assignment which concerns or is related to the matters released herein shall be null and void. This Paragraph and this Agreement shall not operate to waive or bar any right or claim which -- by express and unequivocal terms of law -- may not under any circumstances be waived or barred. Moreover, this Agreement shall not operate to waive rights or claims if those rights or claims arise after the date Delgado signs this Agreement, nor preclude Delgado from enforcing this Agreement.

7. **Company and Personal Property.** Delgado affirms that, by the time he executes this Agreement, he has returned all equipment, documents, memoranda, records, files, notes, diskettes, credit cards, keys, computers, and any other matter or materials (from whatever source, including information electronically stored) that is the property of, or that was purchased or provided by, Rancho Bravo, including any copies of the foregoing.

8. **Disclaimer of Liability.** This Agreement is not to be construed as an admission of liability or wrongdoing by either party. Both parties also agree that this Agreement does not render either party a prevailing party in the Lawsuit or any other legal action.

9. **Confidentiality and Non-Disparagement.** While this Agreement will be a matter of public record when it is submitted for approval to the Court, Delgado expressly agrees to keep (and states that he has at all times previously kept) all terms and conditions of this Agreement, as well as the negotiations leading up to the Agreement (including offers and counter-offers), confidential and that he will never discuss any information concerning the Agreement or the negotiations leading up to the Agreement with anyone other than his spouse, legal counsel or tax advisor, *provided that* Delgado shall inform any such specified person that he is bound by this confidentiality covenant and, prior to any disclosure, require that such person agree to abide by the terms of this covenant and not disclose any information concerning the Agreement (or the negotiations thereto). If asked, Delgado and his representatives may only state that "the litigation has been resolved." Any further communications or disclosures about the settlement, this Agreement, or the terms and conditions of either are prohibited. This confidentiality provision encompasses not only oral and written disclosures, but also indirect or non-verbal gestures or communications suggesting or implying that Delgado "won" the Lawsuit or "did well" in the settlement. Delgado acknowledges that disclosure of the terms or amounts of this Agreement (by Delgado or anyone he has told) would cause irreparable harm to the Company but in an amount incapable of precise determination. Notwithstanding the above,

4

nothing in this Agreement is intended to prevent Delgado from submitting this Agreement to the Court for approval.

Delgado further agrees that he will not make any legally impermissible statements or representations that disparage, demean, or impugn the Company, including without limitation any legally impermissible statements impugning the personal or professional character of any director, officer, or employee for Rancho Bravo, nor will Delgado encourage or assist others to make any such statements or representations. Delgado further agrees that he will not directly or indirectly seek to cause any person or organization to discontinue or limit their current relationship with Rancho Bravo.

Should Delgado violate this Confidentiality Provision, the Company shall be entitled to injunctive relief in addition to any other available remedy or form of legal and equitable relief (including any and all attorneys' fees incurred by Rancho Bravo in relation to such an action). Delgado further acknowledges that this Confidentiality provision is a material element of this Agreement and that consideration has been given for this provision.

10. **Successors.** This Agreement shall apply to, and inure to the benefit of, the predecessors, successors, and assigns of Rancho Bravo and each past, present, or future employee, agent, representative, officer, or director of Rancho Bravo and any division, subsidiary, parent, or affiliated entity.

11. **Conditions.** Should Delgado breach any provision or obligation under this Agreement, the parties agree that the range of remedies includes, but is not limited to, the following: Delgado shall pay all damages (including but not limited to, litigation and/or defense costs, expenses, and reasonable attorneys' fees) incurred by the Company following and/or as a result of Delgado's breach if such breach is not cured or corrected to the Company's satisfaction within fourteen (14) days of the Company mailing written notice of the breach to Delgado's last known address. Nothing in this Paragraph is intended to limit or restrict any other rights or remedies the Company may have by virtue of this Agreement or otherwise.

12. **Severability.** The parties acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable. However, the provisions of this Agreement are severable, and the invalidity of any one or more provisions shall not affect or limit the enforceability of the remaining provisions. In the unlikely event, therefore, that a court of competent jurisdiction determines that any of the terms, provisions, or covenants of the Agreement are unreasonable, the court shall limit the application of any such term, provision or covenant, or modify such term, provision or covenant and proceed to enforce those terms as so limited or modified.

13. **Applicable Law.** This Agreement shall be interpreted, enforced, and governed under the laws of Indiana.

14. **Nonwaiver.** The waiver by Rancho Bravo of a breach of any provision of this Agreement by Delgado shall not operate or be construed as a waiver of any subsequent breach by Delgado.

15. **Knowledge and Understanding.** Delgado declares, under penalty of perjury, that:

    (a)    He has been advised to, and has consulted with, an attorney prior to executing this Agreement;

    (b)    He has been given a reasonable amount of time within which to consider this Agreement;

    (c)    He has availed himself of all opportunities he deems necessary to make a voluntary, knowing, and fully informed decision;

    (d)    He is fully aware of his rights and has carefully read and fully understands all provisions of this Agreement before voluntarily signing; and

16. **Effective Date.** This Agreement shall become effective on the date Delagdo signs it (the "Effective Date").

17. **Contract Construction.** Because Delgado and his counsel have reviewed this Agreement, the normal rule that ambiguity should be construed against the drafting party shall not be employed in the interpretation of this Agreement.

18. **Court Approval.** The parties acknowledge this Agreement must be approved by the Court. In the event that this Agreement does not obtain approval of the Court for any reason, all matters covered by this Agreement shall be null and void. In such event, nothing in this Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the Lawsuit; and the Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the Lawsuit as if such documents never existed. However, the parties agree that if the Court declines to approve the Agreement in whole or in part, they will work together in good faith in an attempt to re-structure the Agreement to achieve a resolution consistent both with the parties' intent and any directives from the Court, to the extent possible.

19. **Attorney Fees, Costs and Expenses.** The Company and Delgado shall bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of the Lawsuit.

20. **Complete Agreement.** This Agreement sets forth the complete agreement between the parties. Notwithstanding the foregoing, nothing in this Agreement is intended to or shall limit, supersede, nullify, or affect any duty or responsibility Delgado may have or owe to the Company by virtue of any separate agreement or otherwise. Delgado represents and acknowledges that in executing this Agreement he does not rely and has not relied upon any representations or statements not set forth herein made by the Company with regard to the subject matter, basis, or effect of this Agreement or otherwise.

**BY SIGNING THIS AGREEMENT, DELGADO STATES THAT: HE HAS READ IT; HE UNDERSTANDS IT AND KNOWS THAT HE IS GIVING UP IMPORTANT**

6

RIGHTS; HE AGREES TO ALL THE TERMS CONTAINED HEREIN; HE IS AWARE OF HIS RIGHT TO CONSULT WITH AN ATTORNEY AND HAS ACTUALLY DONE SO; AND HE HAS SIGNED THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

MANUEL DELGADO                          RANCHO BRAVO, INC.

*[signature]*                           By: *[signature]* Bravo
                                        Its: managin

Dated: 10/27/15                         Dated: 10/30/2015

DELGADO'S COUNSEL
*[signature]*

Daniel Lapointe Kent
Lapointe Law Firm, P.C.
One North Pennsylvania Street, Suite 730
Indianapolis, IN 46204
Telephone: (317) 829-5870
E-Mail: dkent@lapointelawfirm.com

Attorney for Plaintiff

7